**Cynthia ARTIS, et al., Plaintiffs,**

v.

**Ben S. BERNANKE, Chairman of the Board of Governors of the Federal Reserve System, Defendant.**

**Civil Action No. 01-400(EGS)**

United States District Court,
District of Columbia.

Signed 07/08/2013

Walter T. Charlton, Walter T. Charlton & Associates, Washington, DC, for Plaintiff.

John L. Kuray, Joshua P. Chadwick, Board of Governors of the Federal Reserve System, Washington, DC, Kenneth M. Willner, Paul Hastings, LLP, Washington, DC, for Defendant.

## ORDER

Emmet G. Sullivan United States District Judge

Pending before the Court is plaintiffs' Motion to Alter or Amend the Court's October 10, 2012 Orders pursuant to Federal Rule of Civil Procedure 59(e). For the reasons explained herein, plaintiffs' motion is **DENIED**.

## I. BACKGROUND

On July 21, 2011, the Court entered a Scheduling Order in this case dividing discovery into three phases, the first of which was devoted to class certification. In the Scheduling Order, the Court stated that "Phase I discovery shall include, and is limited to, any discovery that is relevant under Fed. R. Civ. P. 26 to class certification issues arising under Fed. R. Civ. P. 23." Scheduling Order at 2. The Scheduling Order also stated that during Phase I fact discovery, "[d]efendant may depose all plaintiffs and any other witnesses identified by plaintiffs as supporting their motion for class certification and up to five additional witnesses." *Id.* at 3. The Scheduling Order also explicitly permitted plaintiffs to take depositions of defendant's witnesses. Fact discovery on the issue of class certification was to close on July 31, 2012. Scheduling Order at 3.

Before the close of July 31, 2012 class discovery deadline, defendant filed a motion to compel discovery, arguing, among other things, that 1) plaintiffs had failed to appear for any of their properly-noticed depositions; 2) plaintiffs had failed to provide any responses to defendant's document requests; and 3) many of plaintiffs' responses to defendant's interrogatories consisted of "nonresponsive boilerplate" answers that either did not address issues specific to each plaintiff or

were evasive. Defendant sought to compel the requested discovery and also sought an award of its expenses under Federal Rule of Civil Procedure 37.

At a hearing on October 10, 2012, the Court granted defendant's motion to compel, finding that plaintiffs had all but failed to participate in discovery.[1] With respect to depositions, the Court noted that none of the plaintiffs had agreed to appear for their properly-noticed depositions. Plaintiffs conceded that they had not appeared for those depositions, but argued that the depositions had been "premature," essentially expressing their disagreement with the Court's Scheduling Order. The Court also rejected plaintiffs' arguments regarding their failure to produce any documents from any plaintiff. Specifically, the Court found that it was "highly unlikely" that not a single plaintiff had a resume, one category of documents requested. Finally, the Court found that plaintiffs' interrogatory responses were inadequate, incomplete, and evasive. The Court ordered plaintiffs to "fully respond" to the document requests and the interrogatories and further ordered that all named plaintiffs were to appear for a deposition. The Court also awarded sanctions under Rule 37 and directed defendants to submit evidence of the attorneys' fees they incurred as a result of filing the motion to compel.

On November 7, 2012, plaintiffs filed a Motion to Alter or Amend the Court's October 10, 2012 Orders Compelling Discovery. In that motion, plaintiffs argue that the Court's Order granting defendant's Motion to Compel was in error because plaintiffs "responded in full" to defendant's requests for production and interrogatories. Plaintiffs also argue that the October 10, 2012 was in error because the depositions of plaintiffs during the class discovery period were "premature." Plaintiffs also moved to "clarify" certain Orders of the Court.

## II. STANDARD OF REVIEW

 Motions under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment. *Niedermeier v. Office of Baucus*, 153 F.Supp.2d 23, 28 (D.D.C.2001). Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (per curiam) (internal quotation marks omitted). Rule 59(e) does not provide a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (internal quotation marks omitted).

## III. DISCUSSION

Plaintiffs make several arguments in support of their motion to alter or amend pursuant to Rule 59(e). As discussed below, none of the arguments have merit.

### a. Depositions

Plaintiffs' counsel concedes that he "erred" in failing to proceed with the depositions of plaintiffs despite his objections that the depositions were "premature." Pls.' Mot. to Amend, ECF No. 141, at 7. Plaintiffs' counsel continues to insist, however, that the depositions were premature and should not have occurred during class discovery.[2] Counsel

---

1. On October 12, 2012, the Court issued an Order memorializing its October 10, 2012 ruling. ECF No. 139.

2. It appears that plaintiffs' counsel imagines discovery as a one-way street in which he is able to request limitless discovery from defendant but plaintiffs are not required to participate in any discovery whatsoever. Counsel repeatedly invokes *dicta* from the Circuit's opinion on appeal in this case, which states that a statistical analysis of disparities in positions of a plaintiff class

and comparably qualified whites "[u]sually ... will be possible only after the employees obtain data from their employer, either informally or through discovery." *Artis v. Bernanke*, 630 F.3d 1031, 1035 (D.C.Cir.2011). But counsel reads far too much into the Circuit's opinion. Nothing in the opinion suggests that plaintiffs are exempt from participating in discovery, or that plaintiffs are entitled to unilaterally decide not to produce information that they believe the Board may already have. Nor does the opinion state that plaintiffs are entitled to discovery without having

takes the remarkable position that because he is "correct" that the depositions are a "useless exercise" the "harm to defendant's position is nil." *Id.* Plaintiffs' counsel argues that an award of attorneys' fees under Rule 37 is therefore unjust.

■ As an initial matter, this repeating of prior arguments cannot satisfy the standard under Rule 59(e), which does not allow parties to re-litigate old arguments. Moreover, the Court rejects plaintiffs' argument that there was no harm to defendant as a result of plaintiffs' failure to appear for their depositions. Rather, defendant was harmed by having to move to compel those depositions, which have now finally taken place. Under Rule 37(a)(5), the costs incurred in filing such a motion are required to be assessed on the non-movant if the Court grants the motion to compel. Counsel's opinion of the necessity of such depositions is irrelevant to the analysis.

### b. Document Productions

With respect to the document productions, plaintiffs make no argument that would require any amendment of the Court's October 12, 2012 Order. Specifically, plaintiffs do not cite to any intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. In addition, the Court notes that at least one plaintiff has produced documents since the issuance of the Court's October 12, 2012 Order. This significantly undermines plaintiffs' counsel's argument that the original production of documents was "true, correct and complete." Pls.' Mot. to Alter or Amend, ECF 141, at 8. Though the parties vigorously dispute the number of documents recently produced and their significance in the litigation, what is significant

is that documents have been produced since the Court's October 12, 2012 Order.[3]

### c. Interrogatories

Similarly, with respect to the interrogatories, plaintiffs fail to cite to any intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Moreover, like the other categories of discovery, it appears that at least one plaintiff's interrogatories have been supplemented, amended, or clarified since the Court's Order, undermining plaintiffs' argument that the initial responses had been full and complete. *See* Def.'s Opp. to Pl.'s Mot. to Amend., ECF No. 149, at 4.

### d. Additional Requests

Plaintiffs also make various requests to "clarify" prior Orders of the Court. Though these requests do not fall squarely within the scope of a Rule 59(e) motion, the Court will address them briefly here.

First, plaintiffs appear to argue that the Protective Order prevents them from speaking to each other about certain confidential information relevant to each plaintiff. This issue was raised at the October 10, 2012 hearing and the Court rejected the notion that each plaintiff would be permitted to view the confidential, proprietary records of the other plaintiffs or of other similarly situated persons. In the motion, plaintiffs only repeat the argument raised in open court, and therefore the request is denied. Moreover, though argued by plaintiffs, it does not appear that the Protective Order prevents plaintiffs' expert from reviewing any information produced by the Board, nor does the Protective Order prevent any plaintiff from reviewing the files relevant to her employ-

---

properly served formal discovery requests on defendant within the discovery period and in accordance with this Court's orders.

**3.** In subsequent briefing, the parties have debated the significance of certain documents produced after the Court's October 12, 2012 Order. It appears that at least one plaintiff, Earnestine Hill, brought a significant number of documents with her to her deposition. Def.'s Mem. of Suppl. Factual Authority at 4, n.2. In addition to the 973 pages allegedly brought to the deposition, Ms.

Hill apparently testified that she had additional documents at home. The documents included information regarding Ms. Hill's efforts to obtain promotions and transfers, her diplomas and transcripts, and other documents relevant to her employment at the Board. Though plaintiffs vigorously dispute the number of documents, what is significant is that Ms. Hill possessed documents relevant to her employment at the Board, and those documents were not produced until the Court granted defendant's motion to compel.

ment and her own claims. *See* ECF No. 104, Ex. 1.

Plaintiffs also request an evidentiary hearing to allow their expert to explain precisely why plaintiffs claim that the electronic data already produced is "unusable." In their initial motion to compel, plaintiffs did not set forth in any detail why the data was unusable or why the Board's production was otherwise deficient. Having found that plaintiffs failed to specify a discovery request to which the Board failed to respond, the Court denied plaintiffs' cross-motion to compel. Despite plaintiffs' failure to explain the alleged problems with the Board's production in their motion to compel, the Court permitted plaintiffs to serve an out-of-time Rule 30(b)(6) deposition in order to ask defendant about alleged inadequacies in its document production. As discussed more fully in the Court's May 6, 2013 Order, plaintiffs failed to serve a proper notice and the Court granted defendant's two motions for a protective order. As a result of plaintiffs' failure to timely and properly raise their objections to the Board's data production, plaintiffs are now foreclosed from continuing to do so.

### IV. ATTORNEYS' FEES

As discussed above, the Court finds no reason to alter or amend its October 12, 2012 Order. As such, defendant is entitled to recover its reasonable attorneys' fees incurred in moving to compel plaintiffs' responses to discovery. Per the Court's Order, the Board submitted detailed documents supporting its request for attorneys' fees on November 13, 2012. The Board requests $13,906.88 but states in a footnote that it would not object if the Court were to apply the *Laffey* standard and award an amount of $8,849.38.[4]

Plaintiffs object to defendant's proposed fees for several reasons. First, plaintiffs argue that an award of attorneys' fees would be "in violation of the American Rule on Attorney's fees." Pls.' Opp. to Def.'s Calculation of Expenses, ECF No. 151, at 6. Plaintiffs also argue that defendants did not properly confer with plaintiffs because they wrote letters and emails, rather than having a telephone conference or a face-to-face meeting. *Id.* These arguments fail in view of the explicit language in Rule 37 that requires an award of attorneys' fees when a motion to compel is granted. Moreover, Rule 37 requires only that counsel confer on the issues prior to the filing of the motion; it does not specify the manner in which counsel confer.

Plaintiffs only raise one argument regarding the actual amount of the expenses. Plaintiffs argue that the costs incurred are "excessive" in view of the fact that plaintiffs' counsel has earned no money in his representation of plaintiffs in this long-standing litigation. Plaintiffs do not challenge defendant's calculation of attorneys' fees, nor do they challenge the underlying time records in support thereof.

Upon consideration of the records submitted by defendant, the Court finds that defendant's request to be well-supported. The work of collecting the exhibits and other ministerial tasks were performed by a paralegal and a document clerk in less than five hours. A junior associate spent ten hours drafting the motion and the supervising partner spent less than five hours revising the motion and conferring with the client about strategy for the motion and its reply. The supervising partner then spent seven hours preparing for and appearing at the oral argument on the motion, which lasted several hours. The Court finds that this is a reasonable allocation of resources and a reasonable amount of time spent on a motion of this complexity. With respect to the specific hourly rates applied, the Court will apply the *Laffey* rates, which are significantly less than those incurred by defendant.

### V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion to alter or amend is **DENIED**; and it is further

---

4. In the District of Columbia, reasonable hourly rates are determined by the schedule or attorneys' fee rates structure approved by the Court in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 361 (D.D.C.1983). Recoverable hourly rates are illustrated in matrix form and adjusted annually based on costs of living increases for the Washington, D.C. area. *See* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_20032013.pdf.

**ORDERED** that plaintiffs' counsel shall pay defendant $8,849.38 in attorneys' fees by no later than September 3, 2013.

**SO ORDERED.**